[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-12889
Non-Argument Calendar
_____

D.C. Docket No. 1:17-cv-00123-KD-B


SHEILA ZINNERMAN,

                                             Plaintiff–Appellant,

versus

WORTHINGTON INDUSTRIES, INC.,

                                             Defendant–Appellee.

_____

Appeal from the United States District Court
for the Southern District of Alabama
_____


Before WILLIAM PRYOR, BRANCH and JULIE CARNES, Circuit Judges.

PER CURIAM:

Sheila Zinnerman appeals the summary judgment against her complaint that Worthington Industries, Inc., failed to hire her for its technical support team because she was an African-American woman, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2. Zinnerman argues that the reasons proffered by Worthington for filling its two available positions with Caucasian men were pretextual and that its decisionmaker, Julia Yontz, was a mere conduit for the discriminatory animus of Matthew Seeds, who Worthington retained after purchasing Zinnerman's former employer, Taylor-Wharton Cryogenics, LLC. We affirm.

We review *de novo* a summary judgment. *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1300 (11th Cir. 2012). Summary judgment is appropriate when there exists no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). We review the evidence in the light most favorable to the nonmovant and draw all reasonable inferences from that evidence in her favor, but inferences based on speculation are not reasonable. *Kernel Records*, 694 F.3d at 1301.

Title VII prohibits an employer from discriminating against any person with respect to her compensation, terms, conditions, or privileges of employment "because of" her race or sex. 42 U.S.C. § 2000e-2(a)(1). Under the burden shifting approach articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973),

2

Zinnerman established a prima facie case of discrimination, so we consider whether the reasons proffered to deny her a job were pretexts for discrimination. *See Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010). Zinnerman had to prove that the reasons Worthington gave for its employment decision were "false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993). If the reasons Worthington gave "might motivate a reasonable employer, [Zinnerman had to] meet [those] reason[s] head on and rebut [them] . . . ." *See Alvarez*, 610 F.3d at 1265–66 (quoting *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000)) (alteration adopted).

Worthington presented evidence that it had legitimate, nondiscriminatory reasons for hiring Marvin Brown and Joe Kuntz to perform inside sales and technical support functions instead of Zinnerman. Testimony from Yontz and Seeds established that Brown and Kuntz had more experience with technical customer support than Zinnerman. Brown worked for Taylor-Wharton for thirty-four years, during which he became familiar with its product line, accumulated experience in international sales, and served in part as its manager of customer service. Kuntz had a shorter history with Taylor-Wharton, yet he managed the repair shop and oversaw all products returned, and he used his engineering background and skills as a draftsman to contribute to the design and functionality

of Taylor-Wharton products. Zinnerman worked for Taylor-Wharton for nineteen years, but her first three years were spent in accounting, followed by nine years in customer service, and then four years in inside sales and customer service. And Yontz testified that hiring Zinnerman would result in workplace redundancy. Yontz explained that the duties Zinnerman performed in customer service and inside sales were being assumed by Worthington employees in Ohio, and that its Alabama facility would house a team that provided domestic and international customers with technical assistance.

Zinnerman failed to create a genuine factual dispute about the legitimacy of the reasons proffered by Worthington. Zinnerman provided no evidence that the decision by Worthington to hire men with more technical experience was a pretext for racial and gender discrimination. *See Springer v. Convergys Customer Mgmt. Group Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007). Zinnerman argues that she "was not seriously considered for the [two] positions [Worthington] was seeking to fill" and likens herself to the applicant who decisionmakers failed to consider in *Joshi v. Florida State University Health Center*, 763 F.2d 1227 (11th Cir. 1985). But Yontz testified that Zinnerman failed during her interview to "demonstrate a great deal of technical knowledge about the cryoscience product lines, and certainly not as much technical knowledge as . . . Brown and Kuntz, . . . [which] was an important quality Worthington was seeking in the new hires." Zinnerman argues

4

that the company shifted its explanation for its employment decision by requiring candidates to have experience in technical support when the original job posting required experience only in inside sales and customer support, but the record establishes, at most, that the weight given to certain criteria might have changed, which does not prove pretext. *See Tidwell v. Carter Prod.*, 135 F.3d 1422, 1428 (11th Cir. 1998); *Zaben v. Air Products & Chem., Inc.*, 129 F.3d 1453, 1458–59 (11th Cir. 1997). The job posting sought applicants with "Plant training" and "Excellent problem solving skills," and the posting stated that "Basic steel processing and product knowledge [was] not needed, but [was] preferred . . . ." Zinnerman failed, as required to prove pretext, that there were "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the . . . proffered legitimate reasons [given by Worthington] . . . that a reasonable factfinder could find them unworthy of credence." *Alvarez*, 610 F.3d at 1265 (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997)).

Zinnerman also argues that Worthington is liable under a "cat's paw" theory because Yontz's decision was influenced by Seeds's discriminatory animus, but Zinnerman's argument fails. Yontz testified, without dispute, that she considered Seeds's opinions, but she decided who to hire based on her interviews and independent assessments of the applicants' experience and education. And Zinnerman presented no evidence of discrimination by Seeds. Seeds referred to

5

Zinnerman as the "odd man (woman!) out" in an email discussing the right to annual leave based on seniority and allegedly kicked Zinnerman one time and kicked her chair on two other occasions, but aside from Zinnerman's speculation, she identifies no facts from which to infer that Seeds harbored any race or gender-based animus. *See Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) ("[M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion."). The evidence negated Zinnerman's theory that Yontz was a conduit for unlawful discrimination.

The district court did not err by entering summary judgment in favor of Worthington and against Zinnerman's complaint of discrimination based on her race and gender. Zinnerman failed to present evidence that the reasons proffered by Worthington were pretextual. The evidence did not establish a genuine factual dispute about whether the reasons Worthington did not hire Zinnerman were nondiscriminatory or legitimate.

We **AFFIRM** the summary judgment in favor of Worthington.